The third case for argument is 25-2550 from the District of Minnesota, Andrew Halloran v. Unum Life Insurance Co. of America. All right, let's see, good morning, Ms. Tatarin, we'll hear from you first for the next one. You may proceed. May it please the Court, Chief Judge Culleton, your Honors and Counsel. Please adjust that microphone so we can hear you well. Thank you. Good morning. Before the Court this morning is an Arisa DeNoble case, which should be an easier burden for Mr. Halloran than a deferential review. We respectfully request that the District Court's decision be reversed based on a number of errors that we have briefed. The District Court appears to have been persuaded by Unum's argument that the treating physician, Dr. Freehill's sedentary capacity restrictions in 2020 and 2021 meant that he could work in gainful employment and that what happened during the claim process is irrelevant to the Court's consideration. As a result of that, the District Court did not consider all of the evidence in the record. I would like to address, first of all, the sedentary capacity level issue. I'd like to address next the DeNoble review process that I believe was not handled according to what should have been done under Arisa and also some mistakes that were made that the District Court judge relied upon some factual incorrect information in supporting his conclusions. Regarding the sedentary capacity issue, the District Court decided that Dr. Freehill's restrictions as of April 12 of 2022 supported Mr. Halloran's ability to work in sedentary capacity and that his restrictions that were given based on a May 2 examination only two and a half weeks later were too late. But the whole purpose of an appeal process is to permit a claimant to perfect the claim and to provide the insurer what it believes is necessary. A physician opinion or further examination are very common pieces of evidence that claimants provide on appeal. To put some context into this issue, Mr. Halloran's regular occupation was a sheet metal fabricator, a medium-level capacity job. It required lifting up to 50 pounds. It required extensive walking and standing. And also, according to Unum's own review, it required constantly reaching and handling. And Unum determined prior to the denial earlier on, and this is at Appendix 1392, that it was very unlikely that Mr. Halloran would be able to return to his job because of the significant surgery he had, his continued limitations, and noted the constant reaching and handling of his own job. Dr. Freehill understood Mr. Halloran's job requirements and did not want him to work. The restrictions never addressed, in 2020 and 21, never addressed his upper extremity limitations. And that's really the only thing that kept him from working were his shoulders. He could walk. He could stand. Dr. Freehill put those sedentary-level restrictions down because he knew that would prevent him from returning to his medium-level job. Obviously, given the extensive shoulder surgery that he had and that Mr. Halloran was still recovering, it's unrealistic to assume that Dr. Freehill thought he had no limitations. Unum was aware prior to the denial that Dr. Freehill had moved to a new clinic and that Mr. Halloran was not able to get in to see him until May 2. Unum could have waited for that and even informed Mr. Halloran that it would reconsider its position once he had that appointment. Unum ultimately did reconsider and seemed to have dropped the reason that the sedentary-level capacity that Dr. Freehill had given in 2020 and 2021 and was based purely on the medical review by Dr. Weinstein. The issue about Mr. Halloran's ability to work is not whether he has sedentary capacity but whether he's capable of working in a gainful occupation, which must pay at a rate of 60 in training and experience. Importantly, Unum's own claim manual instructs that the physical demand categories, such as sedentary capacity, are only a starting point and are generally insufficient as stand-alone descriptions. It also says that these terms are commonly understood to refer only to the ability to lift and carry and sit, stand, walk, which matches the description in Dr. Freehill's notes of weight restrictions and activity restrictions. The claims manual states that further information is needed to determine the ability to work in any occupation, including such things as fingering and handling. Sedentary capacity only refers to the physical functions. It does not consider tolerance or how pain may affect non-exertional tasks. Mr. Halloran consistently reported high levels of pain. The district court did not analyze Mr. Halloran's pain regarding the ability to work. He repeated the reviewing physician, Dr. Groton's conclusion that his pain was stable. That it's stable does not speak to how severe his pain was or to the tolerance and his ability to work. On page 19 of the reply, I go through various parts of the record that show that Mr. Halloran was suffering pain, that he didn't recover from the surgery he had in 2019. We provided objective evidence that correlates the pain or supporting the pain. Also, the policy doesn't require specific restrictions from a physician to determine disability. Even without the restrictions from Dr. Freehill, prior to April of 2022, as I pointed out before, UNAM had listed his inability to perform reaching activities and handling. What was the date, excuse me, when the coverage changed again? Was that in April? The change in definition changed April 13, 2022. Yes. I mean, is there anything before that in the record that indicates your client could not perform sedentary work? Maybe you just went through it, but what should I look in particular for? Prior to April of 2022, you have all of the records indicating his pain level. But is there anything that just specifically said he can't perform sedentary work? I thought the record showed prior to that date that he could. The record, as I was discussing, Dr. Freehill put sedentary capacity, but that doesn't mean he can actually perform the work. You have to look at a particular job, what those duties are, and that's something that was never done here. We were actually never provided in this record what the specific duties were of the three identified jobs. There's a difference between sedentary work and sedentary capacity is the point I take it. Yes. And as I pointed out in Unum's own claims manual, they instruct that that is the case. Okay. Thanks. The district court acknowledged that Dr. Freehill's restrictions didn't even change when Mr. Halloran saw him on June 1, 2021. He came in a sling. He was unable to even perform a shoulder exam because of the significant pain. That again shows that Dr. Freehill did not intend those sedentary capacity restrictions to be anything more than weight and activity. Lastly, the district court relied on a different rationale than Unum did. As I mentioned before, Unum appeared to drop the sedentary capacity that Dr. Freehill had put in 2020 and 2021. Dr. Grouton and the vocational review were the two things they relied upon in their final denial. The district court should have limited its review to the final denial reason. What's your authority for that? I thought we have some law that says if we're on a de novo review, then the district court is not constrained by the administrator's rationale. I'd like to turn to that now because under the Davidson and Donatelli older cases, it is correct without any deference to the administrator's decision. More recently in the Ninth Circuit, the Collier case discusses this issue in much more detail. The district court should also have taken into account its contractual obligation, Unum's contractual obligations under the plan and under the regulatory settlement agreement and the guidance of the Unum claims manual. It also should have considered what took place during the claim process. After all, this is a case where plaintiff is basically limited by this administrative record. Unum controls the claim process for the most part. And while accepting Unum's position, considering the reviews that were done, the court did not consider nor did it address the problems that were asserted by Mr. Halloran regarding his reviews and process. We pointed out that Dr. Groton had made several errors in his report. Number one, he confused the surgery that was planned for the left shoulder when it was for the right shoulder. The district court relied on that, saying basically there's nothing wrong with the right shoulder. The medical records show that there clearly was something that overuse from having the left shoulder, you know, going through a recovery, he had to use his right arm a lot and that started the pain that he was having. So you have Dr. Freehill's opinion. You have another subspecialty shoulder surgeon from Mayo Clinic who recommended in June 2022 that he have surgery on both shoulders. And it was the right shoulder that was the focus for the first surgery. That was postponed because Mr. Halloran needed to get his left shoulder in better shape before he could, you know, be without the use of his right hand. So going back to the standard of review very quickly, and I'd like to reserve some time for rebuttal, but, you know, a plaintiff always has the burden of proof, and it should not have less protections with a de novo review. This court in the Walk v. Group long-term disability case, the 2001 case, described the de novo review as more rigorous, meaning a more rigorous review of the administrator's decision. And if you look at the Firestone case, which is cited all the time in these ERISA cases, their report made clear that what happens in a de novo review is a review of the administrator's decision. It's not just looking at specific evidence and making a decision. I'd like to reserve the rest of my time for rebuttal. Thank you. Ms. Herring, we'll hear from you. May it please the Court. Jacqueline Herring on behalf of Unum Life Insurance Company of America. In this case, the district court did exactly what a district court is supposed to do on ERISA de novo review under Rule 52, a bench trial. The district court carefully and conscientiously evaluated all of the evidence, made credibility determinations about that evidence, and ultimately reached the decision that Halloran failed to satisfy his burden to prove that he satisfied the plan's definition of disability that required that he be unable to work in any gainful occupation. The district court's findings in this factually detailed opinion are not clearly erroneous, are plausibly supported by the record, and should be affirmed. What Halloran is asking this Court to do is sort of a fundamental distortion of what de novo review is. What the district court is tasked with on de novo review is evaluating the claimant's claim for payment of benefits, evaluating the disability determination. It's not an evaluation of bad conduct by the administrator. The judge, that's what de novo review is. It's under Rule 52, where he has the discretion to be the fact finder and weigh the evidence under this Court's precedent. That's what the judge did in this case. It's not a review of what somebody deems bad conduct by the administrator. Regardless of what the administrator did, it doesn't make Mr. Halloran any more or less disabled. That is the fact-based decision that needs to be made based on the evidence. And Mr. Halloran failed to persuade the district court that he was, in fact, disabled and unable to perform any occupation based on the evidence. And the evidence fully supports that decision. Counsel stresses this sedentary concept, but the issue here that's really an attempt to sort of flip the burden of proof. Halloran is essentially arguing that Unum has to prove he can do some other work. And that's not the way either the plan or the burden of proof under Rule 52 works. It's Halloran's job to establish that he is unable to perform any occupation. And no doctor, no medical expert opined that as of April 13, 2022, Halloran was unable to engage in any work. And, again, the concept that Halloran is presenting is that, well, since Dr. Freehill didn't say anything about it, we must assume or interpret that to mean that he just, he thought it, but he didn't put it down because he didn't think it was necessary. Well, what the district court found as the fact-finder, it doesn't agree with that. And pointing to a different, what I think is an implausible, but certainly a different view of the evidence does not make the district court's finding on that issue clear error. And Dr. Freehill was specifically asked, is, was Halloran able to do these specific requirements of the occupations that had been identified? Dr. Freehill did not answer that specific question. He made a general reference to the only restrictions I imposed, and you should probably read exactly what he said because otherwise counsel will say something different. I was under the assumption he remained on same restrictions until evaluated by me 5 to 22. And what are you reading from there? This is at page 1567 in the appendix. This was Dr. Freehill's response on June 7, 2022, so again, a contemporaneous response when he was asked, is, is Mr. Halloran able to do, and there were sort of four specific things identified in the letter that he was responding to, and he was given options of yes, no, no opinion. And what he did is, he didn't answer yes, no, or no opinion, but he gave a narrative and said, that says, from my standpoint his restrictions remained as issued from 6-1-21 through 5-2-22. And when you look at what those restrictions were, and that is on page 1063 of the appendix, he gives weight restrictions of sedentary work, lifting, carrying, pushing, pulling, up to 15 to 20 pounds, up to 15 to 20 pounds of lifting, carrying, pushing, pulling, activity restrictions of mostly seated work, and he specifically says he can return to work with those limitations as of today. And every time he was specifically asked, what limitations are you imposing, he never identified any limitations on reaching, handling, fingering, nothing like that. There is absolutely nothing in the record where Dr. Freehill imposed those restrictions and said they applied as of April 13, 2022. To the contrary, he specifically said, the restrictions, in my opinion, that apply during this time period are those restrictions identified in June 2021. So again, for the district court to take Dr. Freehill at his word, rather than what counsel says he must have been thinking, is not clearly erroneous, and it's certainly plausible based on this record. In addition to Dr. Freehill's opinion, the district court also had the opinions of Dr. Gratton, Dr. Weinstein, and two registered nurses. So no medical expert favoring Halloran's position or identifying that he is not able to work in any gainful occupation. Multiple medical professionals saying he can, and he's not restricted from doing that. So it's not clear error for the district court to side with the medical experts rather than counsel or Halloran's interpretation of what the medical evidence means. And that's really what we're hearing. We're hearing that, well, he complained of pain, he complained of this, he complained of that. He complained of that to Dr. Freehill. And Dr. Freehill formulated his functionality based on those complaints. The same with Dr. Weinstein and two registered nurses. They've looked at that in combination. And that's why the medical expertise is really important. Because, of course, any of us can look at a medical record and say, oh, he's complaining of pain, that must mean he's unable to work. But the medical experts look at everything in context. They take those pain complaints. They take the normal MRI. They take that normal EMG with only an old finding on the right wrist for more than a decade. They put that all together and they decide what is his functionality. And the functionality that was determined did not prevent him from engaging in, and it's not just generic sedentary occupations. There were, and again, we're not required to actually identify any, but UNUM did. And specified what the functional requirements of those occupations were. And none of them required reaching. A lot of the pain complaints or other things that are within the records are, well, when I lift my shoulder above 120 degrees. Well, so there are occupations that exist where you don't have to do that. So it would not prevent him from performing those occupations. I had pain on deep palpitation of a particular muscle. Well, there are certainly occupations where that's not going to happen. And so that pain complaint is not going to prevent him from performing those occupations. So again, what we're here to address is the district court's findings clearly erroneous. And they're not. They're supported by every single medical expert in the record. There is no contrary medical opinion specified to the April 2022 time period. Now, Hellerin's brief also argues, well, the district court ignored everything that occurred after 2022. Well, the district court didn't. It considered that information and it found it unpersuasive because the contemporaneous evidence said one thing and the subsequent evidence didn't say, well, that's wrong because in reality, back in April 2022, Dr. Freehill didn't say, well, back in April 2022, my real opinion was this and it just didn't come through clearly to you all. He said, we've had an FCE now a year later and that seems reasonable to me. But he never said, and it applied as of a year ago. And so to say that the district court is clearly erroneous for finding the contemporaneous evidence more persuasive than vague assertions from a year later just doesn't fly. That's not what clear error means. The district court would have to be not plausible based on the evidence. And certainly what the district court did here is entirely plausible and fully supported by the evidence of record in this case. And I think that's all I have to say. The district court carefully considered the evidence, carefully weighed the evidence, made its findings a fact. Those findings are subject to review for clear error. And there is no clear error. They are plausible and should be affirmed. Very well. Thank you for your argument. We'll hear rebuttal. Just please readjust the microphone so we can hear you well. Thank you. All right. I have a few points I'll try to quickly make here. Going to the district court's clear error on the factual, you know, based on the findings that supported his conclusion. He stated that Dr. Freehill's July 25 letter provides an opinion about Mr. Halloran's functional capacity as of April of 23, not April of 22. But that's incorrect. The letter very specifically states that Mr. Halloran's condition remained relatively the same since he saw him in May of 22. Let's please turn on the clock. Go ahead. And so you have that opinion. You also have the opinions that were given at the time in May of 22. What was the first one you mentioned? Dr. Freehill's letter dated July 25 of 23. That is at 2110 in the record. Right. He specifically stated there that the condition remained relatively the same since he evaluated him in May of 22. But both of those dates are after the... Right. But you have an opinion from him that in May, when he evaluated him, that was sent to UNM, that as of April, he should not work due to these upper extremity... The significant weakness and the pain. So you think the May 22 letter is more important? I think that they're both important, you know, because the July letter from Dr. Freehill... Reaffirms. And it goes into detail about that. What's the site for the May letter that you're focusing on? So we're sure to be looking at the right document. I don't have that. I'm sorry. I know I've cited it in the record, but I do not have that. I'm sure we have the citation. Thank you very much for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course.